Trustees of Au-
gusta
vs
Perkins.

---

## Trustees of Augusta *vs* Perkins.

### APPEAL FROM THE BRACKEN CIRCUIT.

*Trustees of Towns.   Ejectment.   Public highways.*

JUDGE BRECK delivered the opinion of the Court.

THIS is an appeal from a judgment in favor of the ap-
pellee, in an action of ejectment brought by the appel-
lants, for the public square in the Town of Augusta.

Various errors are assigned, preliminary to the consid-
eration of which it will be necessary to advert to the facts
as they appeared upon the trial.

EJECTMENT.

Case 118.

*May 16.*

TRUSTEES OF AU-
GUSTA
vs
PERKINS.

Facts appearing
in the record.

In 1797, the County Court of the County of Bracken, on motion of Philip Buckner, the proprietor, condemned six hundred acres of land, by metes and bounds; vested the same in Trustees, and established the Town of Augusta. Francis Wells and six others were appointed Trustees. The town was laid off into lots and streets, with a public square or common in the centre.

In 1805, Philip Buckner, Robert Davis, Martin Marshall, John Marchel, Vachel Wildin, and John Sells, all, except Buckner, being Trustees of Augusta, conveyed, for the nominal consideration of one dollar paid Buckner, to Isaac Day and others, Justices of the County of Bracken, and their successors in office, for and to the use of said County, said public square, or two acres thereof, by metes and bounds, excluding from the described tract the main street or so much thereof as passed through it. The deed of conveyance was, on the day of its date, acknowledged by the Trustees and duly recorded in the office of the Bracken County Court. It does not appear to have been acknowledged by Buckner.

From shortly after the date of this deed the County and Circuit Courts for the County of Bracken were held in buildings upon this public square till 1838. In 1823, a new Court House was erected, and the public ground subsequently enclosed. The new Court House was erected upon and across main street, or what would have been main street, had it been continued on through the public square.

The County Court, by order, in 1813, vested a portion of the ground in the Trustees of Augusta, for the erection of a Market House.

Authority was also given by the Court and appropriations made to sink a well upon the property. The County Jail was also situated upon it. And thus the County Court, from 1805 till 1838, exercised continued and unquestioned control over the public buildings upon the public square. The residue was a common with roads, paths, or walks passing through it in different directions, till it was finally enclosed, about 1823.

The Court House was used by the citizens of Augusta in their elections of Trustees, for public meetings, &c.

but with the assent, generally, of the person to whose care and keeping the County Court had entrusted it.

TRUSTEES OF AU-
GUSTA
vs
PERKINS.

In 1838, the seat of justice for the County of Bracken was, by an act of the Legislature of Kentucky, removed from the town of Augusta, and full power and authority were by the same act given to the County Court to make sale, at public auction, to the highest bidder, of the public ground and public buildings thereon, in the Town of Augusta, and upon the payment of the purchase money, the Court were authorized to convey to the purchaser such title as the County Court held to the property. One third of the proceeds of such sale to be ratably divided among the original subscribers of $3000, towards building the Court House upon said public ground, thus authorized to be sold, and the other two thirds to be appropriated in aid of the erection of a new Court House at the place designated for the future seat of justice.

In virtue of this act the County Court appointed a Commissioner to effect the sale. The appellee became the purchaser, and the Justices of the County Court conveyed to him all their interest, right, and title to the public ground embraced in the boundary of the deed of 1805, to the Justices of the County of Bracken, from the Trustees of Augusta, without any reservation or exclusion. The deed was duly acknowledged and the possession of the premises delivered to the appellee, who put his tenants thereon and afterwards claimed to hold the premises exclusively in his own right.

There are three counts in the plaintiff's declaration. The declaration. The first is upon the demise of "The Trustees of Augusta," without designating their names.

The second upon the demise of Francis Wells and John Bonde, who, it appears, are the only survivors of the original Trustees.

The third is upon the demise of said Wells, and Bonde, and the heirs of all the other original Trustees, they having previouslly departed this life.

Such being the history and facts of the case, the plaintiff, by his counsel, moved the Court to instruct the jury:

1st. That the legal title in the property in dispute is in the lessors of the plaintiff.

TRUSTEES OF AU-
GUSTA
vs
PERKINS.

2d. That the use of the County Court in the property in contest was not incompatible with the rights of the lessors of the plaintiff.

3d. That the deed from the County Court to the defendant, Perkins, did not vest in him the legal title to the property in contest, or to the exclusive use thereof.

4th. That four poles in width through the public square, called main street, did not pass the use to the Justices, in the deed to the County Court Justices, to them for the use of the County.

5th. That five poles on the north end of the public square did not pass, by the deed last mentioned, to said Justices for the use of the County.

The Court refused to give any of these instructions. And whether the Court erred in withholding them, in whole or in part, will be now considered, and as much depends upon the effect of the deed of 1805, from the Trustees to the Justices, that will be first noticed. In reference to that deed the first question is, did it pass the title of the property in contest?

The Trustees of towns, after being invested with the title to the land, laying off the same into public grounds, streets, alleys, &c. have no legal authority to sell and convey the streets, commons or alleys to individuals.

The Town of Augusta was established under the statute of 1796, a general law concerning the establishment of towns, and no doubt can exist that under that act the legal title to the entire tract upon which the town was established, vested in the original Trustees. This question was, in effect, settled by this Court in *Trustees of Falmouth* vs *Horter*, (4 *Litt.* 119.)

If then the title vested in the original Trustees, the next enquiry is, to what extent could they legally dispose of it? They had no authority to sell or convey except what they derived from the statute. *That* directs them to lay off the land, vested in them, into convenient streets and lots; to dispose of the lots at public auction, and convey them to the purchasers in fee simple, and this was the limit to their authority to sell and convey. By the term lots we think was intended private lots, and by it would not be implied an authority to sell or convey the streets, alleys, or commons. The law does not expressly give authority to the original Trustees to lay off a common or public square, but as to the manner of laying off the town they have a general authority and discretion. They can

TRUSTEES OF AUGUSTA
*vs*
PERKINS.

determine the number and width of the streets and alleys, to suit the convenience of the proprietors of lots and the public, and if, for similar purposes, a common or public square is laid off and reserved, it should not be regarded as an abuse of discretion or as an assumption of authority. Besides it may be presumed that Buckner, the original proprietor, on whose motion his land was condemned, the town established, and Trustees appointed, was consulted and assented to the manner of laying off the town, and the reservation of the common for public use. Such reservations are made for the use, convenience, and ornament of towns and cities, and it would be a rare instance to find a town or city without a public square or common. When the Town of Augusta was laid off and a plat thereof made, the duty and authority of the Trustees were that far *functus officio.* The streets and alleys and common were thereby, and henceforth, dedicated to the use for which they had been reserved. The Trustees had no authority to convert them to any other use or purpose than was contemplated by the original reservation. Nor had Buckner, the proprietor, any interest or title to the streets and common other than any inhabitant of the town. Reservations thus dedicated to the public use, should be preserved inviolable. But these questions have been settled by this Court.

In *Buckner et al.* vs *Trustees of Augusta,* (1 *Mar.* 9,) this Court decided that a deed by the Trustees for a portion of the street was void. It does not appear that this conveyance was made by the original Trustees, but as the law gave the successors the same authority to convey that the original Trustees had, it follows that the conveyance, if made by the latter, would also have been void.

In the case of *Kennedy's heirs* vs *the Town of Covington,* (8 *Dana,* 50,) the doctrine is expressly recognized by this Court, that Trustees of Towns established under the general law, have no power to sell and convey the legal title to the streets, alleys or commons ; that the law gives them authority to sell and convey only the town lots, as designated on the plat of the town. The case relied on by the defendant, (6 *Dana,* 141,) has no reference to public lots or ground. We regard, therefore,

Trustees of Augusta
vs
Perkins.

The *successors* of the original trustees of towns established under the general laws, though authorized to *convey* in certain cases, are not invested with the legal title to the lots not conveyed by the original trustees.

as settled, that neither the original Trustees nor their successors, had any power or authority to sell and convey the land in contest in this suit.

The principle is also settled in the cases referred to, and in *Trustees of Falmouth* vs *Horter,* (4 *Littell,* 169,) that the title vested in the original Trustees, did not pass to their successors, who nevertheless had full authority to convey the title in cases where they were authorized to convey.

If correct in these conclusions, then it may be assumed that the deed of 1805 did not pass the title to the property in contest to the Justices of the county of Bracken, unless Buckner, the original proprietor, or Davis, one of the original Trustees, both of whom joined in the deed, could pass it or some portion of it. As has been before shown, Buckner had no title after his land was condemned by the County Court. It vested in the Trustees, and after they had laid off the town, with the reservation of a public square, he had no title, legal or equitable, to this reservation, except in common with the citizens of the town. We have also seen that the Trustees possessed no authority to convey, and if all united could not convey, then certainly no one of them could pass any title or interest.

As it therefore appears that the title did not pass by the deed, it may be as well here to enquire where the title is.

The Trustees of Towns in whom the title to the land becomes vested, hold the naked fee therein as an unit, having no separate title or interest, susceptible of being converted into a tenancy in common, not affected by the statute abolishing the right of survivorship; they are seized *per tout* and not *per my.*

The original Trustees held the mere naked fee, which was vested in them as a *unit.* They possessed no separate title or interest. They were tenants of the entirety, a tenancy which could not be severed and reduced, or converted into a tenancy in common. Such an estate or title in husband and wife, has been decided by this Court not to be affected by our statute abolishing the right of survivorship, *Ross* vs *Garrison,* (1 *Dana,* 35,) *Rogers* vs *Grider,* (*Ibid,* 243.) This case has a very striking analogy to the cases referred to. The *jus accrescendi* still exists as to husband and wife, because being but one person in law, there can be no moieties between them. They cannot take separate estates under a conveyance to both; but each has the entirety, and they are seized *per tout* and not *per my;* and because the husband

TRUSTEES OF AUGUSTA
vs
PERKINS.

cannot alienate or forfeit the estate. The Trustees in this case were the mere depositories of the title—a public trust, coupled with no interest, and, as to the land in contest, with no power to sell or convey—the title in them being indivisible, as no one possessed the power to lessen or impair it. A careful examination of the statute will, we think, render it apparent that the estates intended to be embraced within its provisions, were those in which there was some personal interest. It provides, that "the parts of those who die first shall not accrue to the survivors, but shall descend or pass by devise, and shall be subject to *debts, charges, courtesy* or *dower*, or transmissible to *executors* or *administrators*, and be considered to every other intent and purpose in the same manner as if such deceased joint tenants had been tenants in common."

We are aware of the opinion of this Court, in the case of *Sanders' heirs* vs *Morrison's executors*, (7 *Monroe*, 54.) In that case the estate had been devised in trust to the executors. Various powers were conferred and duties enjoined upon them, and upon the death of one, the Court was of the opinion there was no survivorship to the other. Whether there is any confliction between that case and those subsequently decided and referred to in 1 *Dana*, we will not stop to enquire : but we think there is very little analogy between this case and that of Sanders' heirs, and that this case is not affected by the statute of 1796, abolishing the right of survivorship. It follows, that in our opinion, the title to the land in contest is in the lessors of the plaintiffs, Wells and Bonde, the survivors of the original Trustees.

Whether the title thus vested can be rendered available in ejectment, as a remedy for restoring the property in contest, to the uses to which it was originally dedicated, is believed to be a question of rare occurrence, and upon which very little light is reflected by the adjudications of this country. It may be assumed, that in the establishment of towns, the object of originally vesting the title in Trustees was to secure to those who might become proprietors and citizens, their rights, so far as related to the soil or land. The obvious design of the proceeding

The original trustees of towns established by the general law in Kentucky, or their survivors, may maintain an ejectment to recover the possession of public ground, streets, &c. which when recovered, will be subject to the use of the citizens of such.

TRUSTEES OF AUGUSTA
vs
PERKINS,
town, and the
public.

in this case, in the name of these title holders, is the furtherance of that object, in restoring to the Town of Augusta the free enjoyment of the premises in contest, as contemplated by the original reservation.

No substantial objection is perceived why the rights of all parties may not be fairly tried by this mode of proceeding. So far as it depends upon arbitrary law, there is a case obviously analagous: *Goodtitle* vs *Alker*, (1 *Burrows*, 75.) That was an ejectment for an encroachment upon the King's high-way, upon the demise of the holder of the fee, and the remedy was sustained by Lord Mansfield. The soundness of this doctrine was questioned by the Supreme Court, in the case of the *City of Cincinnati* vs *The lessors of White*, (6 *Peters*, 431,) and upon the ground, "that the judgment, if carried into execution, must be followed by the delivery of possession to the lessor of the plaintiff:" but, as remarked by Lord Mansfield in the case referred to in *Burrows, it is delivered,* subject to the EASEMENT upon it. So in this case, if the possession is delivered to the plaintiff's lessors, it would be subject to the uses to which the property was dedicated. We have said that the case in Burrows is analagous to this, and so it obviously is, although this must be regarded as much the strongest, and as possessing higher claims for favorable consideration. In that case, the individual owner of the fee brings the suit—in this case, it is brought by Trustees, in whom the title has been vested by law, for the purpose of securing to the Town of Augusta, as public ground, the continued enjoyment of the property in controversy. Upon the whole, we are of opinion, that the remedy is allowable.

The remaining enquiry, therefore, is in reference to the defence relied upon by the defendant.

We have seen that the deed of 1805 did not pass the title to the County Court Justices. The Trustees, who made it, could pass no greater title than the original Trustees, nor could they convey any other or greater interest or control than they themselves had. The property was dedicated to the public use. It was their duty to see that it was preserved and appropriated for that purpose. And so long as the Town of Augusta was the seat

of justice for the County of Bracken, it may be regarded as entirely consistent with the use originally contemplated in the reservation, that the public square should be under the control of the Justices of the County, for the use of the County for a seat of justice; that it would not be in derogation of the interest of the town, in conflict with the object of the dedication, nor repugnant to the feelings of the inhabitants, that it should be so used, and that a Court House, Jail, and other necessary public buildings should be erected upon it, for the use of the County, while it so continued to be the seat of justice. But although the Town may have been gratified that it was so used, and all parties may have cheerfully acquiesced, and for a long time, in its use in this way, and so long as thus used, would still have acquiesced, yet we are not of opinion, that time, unimportant how long, would have ripened or matured this kind of control and occupancy, into a right to convert the property into private purposes, and to terminate and destroy the public use.

The effect of the deed of 1805, was to vest in the Justices the control and possession of the public square, for the use of the County for necessary public buildings for a seat of justice.

To that extent it may be considered valid, as such control would not be inconsistent with the presumed interest of the town, nor the object of the dedication. The long continued acquiescence of the Trustees and citizens of the town, can only be considered an acquiescence in the use, and not an acquiescence in any right to pervert and destroy the use.

We are of opinion, the control and possession of the Justices were not adverse to the title of the lessors of the plaintiff; that time did not enlarge the rights of the former, nor destroy nor weaken the title of the latter.

From the view which we have taken, it follows, that the defendant derived no title by his deed from the Justices of the County Court; that as the Justices had no title, the act of the Legislature could confer no power upon them to vest any in the defendant, as the purchaser of the land in controversy. The act seems to provide for

TRUSTEES OF AUGUSTA
vs
PERKINS.

A conveyance by the Trustees of a town, established under the general law, (of a portion of the property vested in them by the establishment,) to the County Court for public purposes, does not divest the Trustees of the legal title, or authorize the County Court to pass the legal title to another after ceasing to use it for public purposes.

an absolute sale of the public square and the buildings thereon, but authorizes a conveyance to the purchaser of only such title as the County had to the property.

It follows, also, that the Court erred in refusing to give the instructions as moved by the plaintiffs, and that the instructions given, on motion of the defendant, so far as inconsistent with the principles of this opinion, were also erroneous.

The judgment is, therefore, reversed, and the cause remanded, that a new trial may be granted, and further proceedings had, not inconsistent with the principles of this opinion.

*W. C. Marshall and Hord* for appellants : *Payne and Waller* for appellee.