## COMM'RS OF FRANKLIN CO. v. CARRIE R. LATHROP.

| 9 | 453 |
| 42 | 460 |
| 42 | 654 |
| 9 | 453 |
| 46 | 95 |
| 9 | 453 |
| 57 | 70 |
| 9 | 453 |
| 81 | 552 |

1. PUBLIC GROUNDS; *Trusts; Interest of Adjacent Property-owners.* Where the owners of certain lands dedicate a portion to public uses as parks, esplanades, or otherwise, and after such dedication sell and convey lots in the remaining portion facing on such public grounds to others, who erect lasting and valuable improvements thereon, and which lots are enhanced in value by reason of facing on such public grounds, a trust is created therein which may be enforced in equity by those lot-owners.

2. ———— But the mere fact that private lots facing upon a public park, esplanade, or other public grounds, are thereby increased in value, does not create a trust therein which the owners of such lots can enforce in equity.

3. TRUSTS; TRUST LANDS; *Public Uses; How Created.* Under the act concerning plats of cities and towns, the execution and record of a plat of a city, town, or addition, conveys to the county the fee of such parcels of land as are therein expressed, named, or intended for public uses, in trust, and for the uses therein named, expressed, or intended, and for no other use or purpose.

4. ———— *Conveyance by former Proprietor.* A subsequent conveyance of land thus dedicated to public uses by the proprietor of the city, town, or addition, to the county, does not destroy the trust created by the execution and record of the plat.

5. ———— *Private Rights in Trust Property.* The legislature so far represents

the public that its consent to the alienation of public grounds thus dedi-cated is sufficient, if no private rights have intervened.

6. ———— *Vested Rights.* But individuals purchasing from the town pro-prietors, lots facing on such public grounds, subsequent to their dedica-tion, and making lasting and valuable improvements thereon, when lots are enhanced in value by their position, and would be made of less value by a change of such grounds from public to private use, have a vested interest in the trust which no legislature can abridge or destroy. And the repeal of a statute under which a right has vested, does not divest or destroy that right.

7. ———— *Diversion of Trust.* The conveyance of a block of ground for the use of the public as a "court-house square," creates a trust which is not executed by a sale of the block or a portion of it, and the application of the proceeds to the erection of a court house.

*Error from Franklin District Court.*

INJUNCTION, brought by *Carrie R. Lathrop* to restrain the board of county commissioners of Franklin county from executing the power conferred upon them by ch. 85, laws of 1871, (p. 202.) Secs. 1 and 3 of said chapter are as follows:

"SEC. 1. The board of county commissioners of Franklin county is hereby empowered to sell, in the manner herein-after specified, the whole or any portion of the western half of block eighty-five, known as the court-house square, front-ing on Main street, in the city of Ottawa, Franklin county.

"SEC. 3. The proceeds arising from such sales shall be devoted to the construction of a court house for said county of Franklin, and to no other purpose."

The board of commissioners in July 1871 caused the west half of said block 85 to be surveyed into lots, and were pro-ceeding to dispose of the same, under and according to the above-quoted act, when this action was commenced, and a tem-porary injunction procured. The grounds upon which the injunction was asked, and the facts in the case, are fully stated in the opinion. The action was tried at the November Term 1871, and the district court gave judgment as follows:

"It is therefore considered, adjudged, and decreed, that the temporary injunction heretofore granted in this action be and the same is hereby made perpetual, and that the said defend-ants, their servants, agents, attorneys, and successors in office,.

be and they are hereby perpetually enjoined from selling or encumbering any of the said property named in the petition of the said plaintiff; and that the plaintiff recover her costs in and about her suit in this behalf expended."

The *Board of Commissioners* excepted, and a new trial being refused they bring the case here on error.

*C. B. Mason*, for plaintiffs in error:

1. Upon the facts as agreed, block 85, designated as "court-house square," was intended by the proprietors of the town of Ottawa for public uses. This is established beyond question, by the recorded plat, and the acceptance and improvement by the county, and by the description of such block in the deed conveying the same by the Ottawa Town Company to the board of county commissioners of the county of Franklin.

Applying the terms and import of § 6 of ch. 24, Comp. Laws, to the facts agreed, and all discussion relative to the elements of a dedication of realty for public uses is unnecessary, although the principles of the common law concerning the extent of a dedication may be involved. The defendant's title to the adjoining premises, block 86, was derived after the filing and recording of said plat.

The language used in the deed conveying the premises, block 85, by the Ottawa town company to the board of county commissioners, after describing the bounds of the same, is as follows: "The said block being conveyed as a site for county buildings to be erected by the said parties hereto of the second part." It is submitted that this language does not and cannot create any condition annexed to the fee of the premises conveyed by this deed. Conditions in a deed are only express conditions; they cannot be implied. The whole of this instrument must be taken together. Under it there is no conditional fee. The words above cited are to be taken as merely descriptive. This construction is so apparent on the face of the deed it is not deemed necessary to cite authorities. If however on this point the construction of the language of

the deed is to affect in any degree the right of the commissioners to sell the premises proposed, it cannot result else than favorable to that right as against the defendant in error, because the covenants and grant are much more ample than ordinary deeds of warranty in this state. The deed is not any available benefit to the defendant. Her title is subject and subsequent to it; and for any purpose showing her claim to relief demanded, the deed may and ought to be left wholly out of the case.

The whole controversy is then resolved into a construction of said § 6, ch. 24, Comp. Laws, and the further question of the authority of the legislature to pass the law of 1871, under which the board of commissioners are proceeding. Under said § 6 the fee of the premises is vested in the county in trust, and as the property of the county the commissioners have the control of it. This estate is one conferred by the legislative power of the state; at the same time, as against the defendant and all others, the county, by the terms of the deed, holds the unconditional fee in fact and law. It cannot be successfully assumed that by the terms of the statute, or by virtue of any condition in law, the county could be compelled to erect on those premises a court house, although it is named "court-house square," and was set apart for that purpose. The commissioners are expressly authorized by law "to purchase sites for and to build and keep in repair county buildings." The public use for which block 85 was named and intended on the recorded plat, if the county cannot be compelled to occupy it for the designated purpose, vests the acceptance of the square described at the option of the board under the law, and justly so. They ought not to be compelled as a principle to build a court house or county building wherever the whim of proprietors of town companies may select. The "public use" specifically cannot exist—it is only in name—if they cannot be legally compelled to practically and specifically apply the trust. Again, by the terms and circumstances of the case the premises in case of failure to use and occupy for the purpose

expressed would not revert to the grantors, because, by the terms of their grant, the Ottawa town company is estopped from resuming any control of the title, and the premises could not be vacated and belong to adjacent lot-owners because of the absolute fee being in the county. In this unfortunate state of the matter, to say that this parcel of land, by the operation of law, should forever lie idle as commons in the center of a city, and that no power exists by which it can be occupied by compulsion of law for any purpose whatever, by the building of a court house or otherwise, is virtually to render the law under which the dedication was made a nullity, and contrary to the public welfare.

2. On the evidence in the agreed statement- of facts submitted no injury has or can result by the proposed disposition of the west half of block 85, to the premises of defendant in error. If any, it is merely "a damage without any legal injury." We submit, that the proposed action of the board, if carried out, would not violate the reason and the spirit of the law of 1859, (ch. 24, Comp. Laws;) that the law imposing this trust for certain uses does not require its performance in specie; that the law could be invoked, and a remedy applied, if the proceeds arising from the proposed sale under the act of 1871, were appropriated to any other specific use. In other words, under the existing grant, and law of 1859 and 1868, no force and effect can be given to the trust created, or the object for which the premises were designated, if the claim of the defendant is sustained, whereas the objects of the grant and purpose of the law are substantially complied with when the proceedings of the board are carried out in accordance with the act of 1871. And under the circumstances of the case, the fancied injury sustained or suffered by defendant in error contrasted with the public good, presents a case, to which the maxim, "That regard be had to the public welfare, is the highest law," should be applied.

3. Sec. 21 of our state constitution provides that "the legislature may confer upon tribunals transacting the county

business of the several counties such powers of local legislation and administration as it shall deem expedient." No provision of our constitution forbids or prohibits the passing of restrospective laws. (See Walker's American Law, § 29.) There is no doubt of the right of the legislature to make laws which reach back to and change or modify the effect of prior transactions, in all cases where retrospective laws are not forbidden. Cooley's Const. Lim., 370.

The whole law-making power of the state is vested in the legislature; and where the power is so vested in the legislature, and unrestrained by the fundamental law, even its unwise legislation affords no ground for the courts to nullify it. But the act of 1871 is not unwise. It is supererogatory to argue the wide distinction recognized between retrospective; *ex post facto*, and laws impairing the obligation of contracts. They are defined by the highest authority of the land, with a distinctness which avoids any confusion. This is eminently a case in which the power to pass a retroactive law should be exercised. It is frequently exercised in vacations of highways, and they are included in the act of 1859. The interest given by the statute of 1859, if any interest accrued to the defendant or other person claiming against the county, was the mere creature of a power which the legislature has the right to take away. It was not and is not a vested interest or right which cannot be legally divested; and it is to be presumed the law-making power deemed expedient the enactment of 1871, which they had a constitutional right to enact. 3 Lansing, 429.

*Joel K. Goodin, John W. Deford*, and *H. B. Hughbanks*, for defendant in error:

1. Block 85 vested in fee in Franklin county in trust, for a "court-house square," and for no other purpose, upon the recording of the Ottawa town plat on the 27th of February, 1865. Comp. Laws 1862, § 6, p. 119; 9 Ohio, 80; 18 id., 18; 18 Ohio St., 221; 38 Mo., 315. The statute of Ohio is identical with that of Kansas, while the Missouri statute is substantially the same. The deed afterwards made, dated

March 17, 1865, had no effect whatever upon the title or the trust. The town company, at that time, had no interest whatever to convey, and their deed was simply inoperative. The title had vested in fee in the county, subject to the trust, in February 1865. (9 Ohio, and 18 Ohio, *supra*.) This deed was given in evidence by the plaintiff below merely for the purpose of showing that the "court-house square" was *intended* by the parties to be used only "as a site for county buildings." This it was competent to, and did, prove very clearly. 1 Greenl. Ev., § 295, note 1.

2. The act of 1871, entitled "An act authorizing the board of county commissioners of Franklin county to sell certain property," is unconstitutional. The making and filing of the town plat according to law, and the acceptance by the county of the trust thereby created, constituted a *contract* between the county and the town company, and those claiming under it, of whom the plaintiff below is one, and the public. The county is the trustee, and the others are the *cestuis que trust*. This act impairs the obligation of that contract, and divests the vested rights of the *cestuis que trust*. (See the authorities above cited, also 7 Ohio, 217; 7 Ind., 641.) It is a "special act conferring corporate powers," and therefore violates § 1, art. 12, of our constitution. 5 Kas., 603.

3. The finding for the plaintiff below being *general*, this court will presume that the inferior court found all the facts, which the evidence tended to prove, necessary to sustain the judgment. This is a familiar rule of decision.

The opinion of the court was delivered by

BREWER, J.: Defendant in error obtained an injunction in the district court of Franklin county restraining the plaintiffs in error from selling the west half of block 85 in the city of Ottawa, or any portion of it. The ground of the injunction was, a dedication of the block to the use of the public as a court-house square. The undisputed and material facts are these: About the 1st of September 1864 the Ottawa Town Company obtained title to the site of the present city

of Ottawa, and thereon located, surveyed, platted, and laid out, into blocks, lots, streets, alleys, parks, and other public grounds, said city. Such plat, duly acknowledged, was recorded February 27th 1865. On the plat so acknowledged and recorded block 85 was designated as "court-house square." Defendant in error owns some lots in block 86, obtained by conveyances from the town company subsequent to the recording of the plat. These lots face upon this court-house square, and are covered with lasting and valuable improvements, made by both the present owner and her grantor. The county of Franklin in 1867 erected a jail building, with rooms for county offices, at an expense of $15,000, upon this block 85, which building is still standing and used for county purposes only. Subsequent to the record of the plat a deed was executed by the town company to the plaintiffs in error of several prices of ground in Ottawa. Among them was block 85, which was described as "being conveyed as a site for county buildings to be erected by the said parties hereto of the second part." There was testimony, though contradicted, that the value of the lots belonging to the defendant in error was enhanced by their facing on this court-house square, and would be reduced by a change of any part of it from public to private use. The legislature of 1871 passed an act authorizing plaintiffs in error to sell the west half of this block and apply the proceeds solely to the erection of a court house. Under this act the plaintiffs in error were proceeding, when stopped by the injunction. There was a general finding for defendant in error, and no special finding of facts.

Two questions arise: Has the defendant in error such an interest as will enable her to maintain this action? · Was such a trust created by the execution and record of the plat, or the deed to the plaintiffs in error, or both, as will be en-

*1. Trust in public grounds. Interest of adjacent property-owners.* forced at the instance of the beneficiaries? In regard to the first question there is no serious controversy. Indeed, it is no longer an open question in this court, having been settled by the decision in the unreported case of *Young v. Moreland, and others,* from Leavenworth county. There the owners of the lots facing

on the esplanade were held proper parties plaintiff, in an injunction to restrain any appropriation of that public ground to the use of a private mill-yard. The same point is also decided in *Le Clercq v. Trustees of Gallipolis,* 7 Ohio, 218; *Brown v. Manning,* 6 Ohio, 298. Indeed, the principle which underlies these cases is one of wide-spread application. For if a trust be created by the dedication of a piece of ground as a public park, court-house square, street, alley, or otherwise, the parties most beneficially interested in that trust are the owners of the property facing thereon. The value of that property is most materially affected thereby. All dwellers in a city know how nearness to an open plat of ground affects values. Business locates itself with reference to a court-house, or a market square. Residences facing on an esplanade, or a park, are considered most eligible. Now, after parties have bought and improved with reference to such a trust the ordinary and most common rules of equity require that it be enforced at the instance of such parties. We do not mean to be understood as holding that the mere increase in value of property facing upon public grounds creates a trust in those grounds. A city may buy lots, and build a market house upon them. Property adjacent thereto may rise greatly in value in consequence thereof. Still, no trust is created, and the city may sell the lots and convey good title, even though in so doing she materially lessen the value of the contiguous property. The same is true of any public grounds which any municipality may hold by purchase, gift, or in any other manner than in trust. A mere change in values, by the location of public grounds, creates no trust in them. But we need not pursue this question any further, as the other is the main question.

II. Was any trust created by the execution and record of the plat, and if so, what was that trust? The law in force at the time plainly answers this question. The act concerning plats of cities and towns, ch. 24, Comp. Laws, 119, (re-enacted as ch. 78, Gen. Stat. 1868, p. 618,) provides that the proprietor shall cause an accurate map

2. Mere increase of value does not create a trust.

3. What dedication creates a trust.

or plat of the proposed city, town, or addition to be prepared, acknowledged and recorded.     Section 6 reads as follows:

"SEC. 6. Such maps and plats of such cities and towns, and additions, made, acknowledged, certified, filed, and recorded with the register, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named, or intended for public uses, in the county in which such city or town, or addition, is situate, in trust for the uses therein named, expressed, or intended, and for no other use or purpose."

This block was named on the plat "court-house square." Then by this section such plat vested the fee of the block in Franklin county, in trust for, and to be used as a court-house square, and for no other use or purpose.     It passed the fee, but passed it subject to a trust.     Franklin county holds the title, but holds it in trust.     It has the control, but must exercise it in subordination to the conditions of the trust.     It may do anything with it which does not violate the terms of the trust.     The county commissioners are the general agents of the county, and have the general control and management of the county property.     By the act of 1871 they are specially authorized to sell this property.     As agents of the party holding the fee, and specially authorized by the law-making power, they may dispose of that fee, unless such disposition violate the trust under which alone the county holds the property.     The county has accepted and occupied the property.     It cannot therefore now deny the conditions of its acceptance and occupation.     The deed from the town company to the plaintiffs in error recognizes this trust.     Its language might not be sufficient to create a trust. It might not be sufficient to restrict the power of the county otherwise to alienate.     It may be considered as nothing more than a description.     Still, it is in nowise inconsistent with the trust previously created.     It does not attempt, even if it were possible, to limit it.     Counsel claims that it cuts off the reversion of the town company in case the use is abandoned.     Hence, the use being abandoned, and the reversion of the town company cut off, or conveyed to the county, the latter would hold an absolute title discharged of the trust,

4. Effect of subsequent conveyance to county.

and could convey good title to a third party. But an absolute conveyance to a trustee subsequent to the creation of a trust does not discharge the trust nor destroy the rights of the *cestui que trust.* Where the trust is temporary, a subsequent conveyance of the absolute title to the trustee is of value, as giving him the reversion, after the performance of the trust. But where the trust is permanent it is otherwise, and there is value only in the possibility of a failure of the trust. The deed therefore may be laid out of consideration.

It is further claimed that this trust was created through the operation of the act of the legislature heretofore cited; that, being simply the creature of the legislature, that body can destroy it; that in this respect the act of the legislature of 1871 is simply a retrospective act, and that retrospective acts are not forbidden by our constitution. This trust is not the creature of legislative action. True, it arises under the provisions of an act of the legislature, but it is created by the voluntary deed of the owners of certain lands, proceeding under and by virtue of such act. The law did not create the trust. It was the deed of the owners which did. The law simply prescribed certain rules under which the owners acting created it. Without inquiring how far a legislature is potent to destroy a trust it has created, it is sufficient to say this is not such a case. The question here is, can a legislature destroy a trust in land created by the voluntary act of the owners? The beneficiaries in a trust have an interest therein, just as the grantee in an absolute conveyance of land has in that land. It is a vested interest, and one that a legislature cannot disturb. A legislature prescribes the effect of conveyances of land. A party proceeding under such act conveys land. The grantee by virtue thereof obtains full title. No subsequent act of the legislature, repealing or modifying the statute, can divest or affect the title of such grantee. Equally is it so with a trust created by conveyance made in conformity to the provisions of a statute. The conveyance once made, the trust created, it can be destroyed only by the consent of the grantor of the trust,

*5. Legislative enactments; private rights.*

and the beneficiary. It is beyond the reach of legislative power. But we are told that the grantors of this trust, by their subsequent conveyance, have conveyed all their remaining interest to the plaintiffs in error; that the public is the beneficiary, and that the legislature represents the public, so that we have here the consent of the grantor, the trustee, and the *cestui que trust*. This is probably true; and if this consent had been given before any private rights had been built up on this trust, it is difficult to see how this injunction could be sustained. But the lots of defendant in error were purchased of the town company after the creation of this trust; lasting and valuable improvements have been placed upon them; their value is enhanced by this open square, and would be diminished by a change, (for a general finding finds all facts proved, concerning which testimony is offered or necessary to sustain the judgment.) Under these circumstances it seems to us this plaintiff has acquired such an interest in this trust as is beyond the power of the legislature to destroy. Authorities are ample on the general question here involved. Says Williams, J., in the opinion of the court in *Abbott v. Mills*, 3 Vt., 521, "It is customary in laying out towns, particularly when it is contemplated that they will be places of business, to lay out a square or common, and to locate building lots bordering thereon. And these lots acquire an increased value in consequence of their location. If a village is built up, and individuals buy these lots, erect buildings, and commence the establishing of a village, and make it a common center for the business of the town, the other lands in town rise in value, of which the proprietors have all the advantage. It would then be the height of injustice, and contrary to every principle of good faith, to permit these proprietors to derive this advantage, and then frustrate the expectations held out, by resuming the lands thus set apart, and at a value greatly enhanced in consequence of their having been thus set out." So also in the case of *Leffler v. City of Burlington*, 18 Iowa, 361, the court uses this language: "Having done so, and sold lots to

<div style="margin-left:2em; font-size:smaller;">6. Vested rights of cestui que trust.</div>

various purchasers with reference to a plat of the town on which said land is dedicated to the public use by a given and prescribed designation, as other public squares, streets, and avenues are, all such purchasers acquire, as appurtenant thereto, a vested right in and to the use of the same, from which they cannot be divested by the owner making the dedication, nor by the town in its corporate capacity, was it disposed so to do." See also, *Com. Council of Indianapolis v. Awas*, 7 Ind., 9; *Haynes v. Thomas*, 7 Ind., 38; *State v. Trask*, 6 Vt., 355; *Rutherford v. Taylor*, 38 Mo., 315; *Commonwealth v. Alburger*, 1 Wharton, 469; *Rowan's Ex'rs v. Town of Portland*, 8 B. Mon., 232; *Trustees of Augusta v. Perkins*, 3 B. Mon., 437; *Alvis v. Town of Henderson*, 16 B. Mon., 131; *Dubuque v. Maloney*, 9 Iowa, 451; *Cincinnati v. White*, 6 Pet., 432; *Barclay v. Howell's Lessees*, 6 Pet., 498. And especially as to the want of power in the legislature to authorize a change from public to private use, see *Le Clercq v. Trustees of Gallipolis*, 7 Ohio, 218.

Again, it is claimed that this sale would only be in furtherance of the trust, as by the terms of the law the proceeds are

*7. A specific trust cannot be diverted.* to be applied solely to the erection of a court house. A difference in the manner of executing the trust is all that is sought. "In trust, and for the uses therein named, expressed, or intended, and for no other use or purpose," is the language of the statute. Under this a specific execution of the trust is essential. It is not a conveyance of land to aid in the erection of a court house. It is a conveyance of land to be used as a site for a court house. Such use would cease when occupied by an individual, as site for residence or store. The use contemplated is not temporary, but permanent. *Board of Education v. Edson*, 18 Ohio St., 221. These are all the questions presented for our consideration in the record, and finding no error in the judgment of the district court we must affirm it.

All the Justices concurring.