JAMES S. CUMMINS v. SUMMUNDUWOT LODGE No. 3, INDEPENDENT ORDER OF ODD FELLOWS.

No. 604.   (58 Pac. 486.)

CITIES—*Use of Streets—Nuisance.* Where a waiting-room is erected in the streets of a city by the authority of the council thereof, it cannot be abated as a nuisance on the complaint of an abutting lot owner for the reason that said building partially obstructs the view of his business house by persons passing over a particular portion of the street.

Error from Wyandotte district court; HENRY L. ALDEN, judge. Opinion filed October 6, 1899. Reversed.

*Hutchings & Keplinger,* for plaintiff in error.
*McGrew, Watson & Watson,* for defendant in error.

The opinion of the court was delivered by

WELLS, J.: This case is before us for review upon a transcript of the record, and the only real question is, Do the findings of fact justify the conclusions of law? The findings of fact from No. 1 to No. 12, inclusive, are as follows:

"1. Said plaintiff is and was at the time of the commencement of this action a corporation duly organized and existing under and by virtue of the laws of the state of Kansas, and the owner in fee of the real estate mentioned and described in plaintiff's petition, to wit, lots numbered twenty-eight (28) and twenty-nine (29) in block numbered one hundred and fifteen (115) in Wyandotte city, now a part of Kansas City, Kan.

"2. Said lots are located on the northeast corner of Minnesota avenue and Sixth street in said city, and abut on the north line of Minnesota avenue and the east line of Sixth street. Upon said lots there is and for many years has been a large, three-story brick building, fronting south on Minnesota avenue, the full width of said lots, to wit, fifty feet, and extending back along the east line of Sixth street a distance of eighty feet. The lower story of said building is used for store purposes, the second story for office purposes and the third story for lodge purposes.

"3. Minnesota avenue and Sixth street are public streets and thoroughfares of said city; said avenue is one hundred feet in width extending east and west through said city, and Sixth street is eighty feet in width extending north and south through said city, and they cross each other at right angles at the intersection thereof; said avenue with its intersection with said Sixth street, and for a long distance both east and west of said intersection, is used for business purposes, said point being the principal business center of said city, and is constantly occupied and used by large numbers of people in passing back and forth, both on foot and in vehicles.

"4.  Upon said Minnesota avenue the Metropolitan Street Railway Company maintains and operates as a public carrier a double-track cable railway, and upon said Sixth street said railway company maintains and operates as a public carrier a double-track electric railway, and at said intersection of said streets large numbers of people transfer from the one to the other of said railways both day and night.

"5.  The first street north of Minnesota avenue and running parallel with it is State avenue and the first street south of Minnesota avenue and running parallel with it is Armstrong avenue.  The grade of Sixth street descends from Minnesota avenue north to State avenue and from Minnesota avenue south to Armstrong avenue.  In constructing said electric railway along Sixth street an excavation eighteen feet in width, was, by permission of the mayor and council of said city, duly granted by ordinance, made along the center of Sixth street from the north line of Armstrong avenue to the south line of State avenue, said excavation commencing at grade on the north line of Armstrong avenue and extending north to Minnesota avenue where it is twenty feet in depth and thence north and terminating at grade on the south line of State avenue.  On both sides of said excavation are retaining walls built up to a level with the grade of Sixth street with an iron railing three feet in height extending along the top of said retaining walls from Armstrong avenue to the south line of Minnesota avenue and from the north line of Minnesota avenue to State avenue.  Over said excavation upon Minnesota avenue, and extending the full width of said avenue is a wooden bridge.  Said electric railway runs through said excavation under said Minnesota avenue.

"6.  The ordinance of said city granting the franchise for the construction of said street-railway along Sixth street provides among other things, in relation to the maintenance and operation of said railway, as follows :

"'Said grantees shall have the right to excavate and provide under said bridge and avenue sufficient room, additional to said cut, for

the accommodation of the public using said railway and to connect said room with the sidewalks of said Sixth street inside the curb line thereof, north of Minnesota avenue, with proper stairways, safely guarded and not over five feet in width. Said grantees may construct and maintain at such points along the line of said railway, such depots and waiting-rooms, with stairways leading thereto, as may be necessary and requisite for the accommodation of the public.'

"7. Said railway company did make the excavation through Minnesota avenue under said bridge about eight feet wider on each side than at other points north and south of said avenue and constructed stairways leading therefrom to Sixth street, but said stairways were constructed along the sides of said excavation north of Minnesota avenue, terminating at the top about twelve feet from the curb or sidewalk lines on Sixth street, with walks built over said excavation, and safely guarded by railings, leading to the sidewalk upon the north side of said avenue or bridge. In said excavation underneath said bridge the railway compay built platforms and provided benches for seats for the accommodation of its patrons but no room has been enclosed, or provided with conveniences as a waiting-room for passengers by said railway company in said excavation.

"8. Some time prior to the commencement of this action said defendant entered into an arrangement with said street-railway company for the erection of the building mentioned and complained of in plaintiff's petition, whereby said defendant was to erect said building and maintain a portion thereof as a waiting-room for passengers on said railway, said defendant in consideration of the erection and maintenance of said building to also use and occupy the same for the sale of cigars, fruit, newspapers, periodicals and other similar articles.

"9. After making said arrangement with said railway company said defendant sent a communication to the mayor and council of said city asking permission of said mayor and council to erect said building 'at the northeast corner of the bridge over the L road at Sixth and Minnesota avenue, to be used as a news-stand and waiting-room,' and in response thereto, the following action was had by the council of said

city as appears by the record of proceedings of said council, to wit :

" ' Communication from J. S. Cummins asking permission to erect a small building at the northeast corner of the bridge over the L road at Sixth and Minnesota avenue to be used as a news-stand and waiting-room was read and granted, on roll-call, five ayes to three nays. Buchalter, Logan and Sullivan voting nay. Same to be built under the directions of city engineer.'

" 10. Pursuant to said arrangement with said railway company and the action of said city council above stated, said defendant made preparations to and was about to erect said building at said point when said plaintiff filed its petition and made application for a temporary injunction herein, and obtained a temporary restraining order, restraining said defendant from erecting any building or other obstruction on or in Sixth street at the point above mentioned pending the hearing of said application for a temporary injunction.

" 11. Subsequent to the commencement of this action and the granting of said restraining order and before service thereof was had upon said defendant, said defendant commenced the erection of said building, putting up the four walls with openings for windows and door and putting the roof thereon, when work thereon was stopped by the service of said restraining order. Afterwards, upon application of said defendant, permission was granted by the court to put in the door and window to protect said building from the weather during the pendency of this action ; whereupon the defendant without any leave or permission of the court so to do, placed in said building a stock of cigars, fruit and so forth, and has ever since continued to occupy the same, using from one-half to two-thirds the space inside of said building for that purpose.

" 12. The building so erected by the defendant is located over the excavation in Sixth street above mentioned immediately north of and adjoining the north line of Minnesota avenue, the east end about three feet west of the center of Sixth street, the floor being level with the bridge which forms a part of said avenue at

that point. Said building is fourteen feet in length from east to west, eight feet in width and eight and one-half feet in height. There is a window on the north side which extends close up to the east end of said building and overlooks the tracks of said electric railway on Sixth street. Directly opposite said window on the south side of said building is the door, the upper half of which is glass, and immediately west of said door is a large window which is used by the defendant for the purpose of displaying the goods which he has for sale therein."

The conclusions of law are as follows:

" 1. That the ordinance granting the right to the above-mentioned street-railway company to construct its said road along Sixth street in said city and to make the excavation in said street above mentioned gave said company, its successors or assigns, no right or authority to erect or maintain any building or other structure at the intersection of Minnesota avenue and Sixth street in said city for a waiting-room or other use or purpose, except in said excavation under said bridge and avenue, and said defendant obtained no right or authority to erect or maintain said building over said excavation at said point by his contract or arrangement with said company therefor.

" 2. That the council of said city had no power or authority to grant permission for the erection of said building at said place, and said defendant obtained no right to so erect or maintain said building by the action of said council mentioned and set out in above findings of fact No. 9, and the erection of said building by said defendant upon a public street of said city was and is unlawful.

" 3. That said building so as aforesaid erected by said defendant at the intersection of Minnesota avenue and Sixth street in the said city of Kansas City, Kan., is a public nuisance, as well as a special and private nuisance, to the plaintiff herein, and said plaintiff is entitled to an order for the removal of the same.

" 4. That said plaintiff is entitled to the relief prayed for in its petition herein."

Cummins v. Summunduwot Lodge.

So far as the consideration of this case is concerned, we shall ignore the fact that a part of the uses for which the building in controversy was erected was of a private nature, and consider it from the standpoint of a waiting-room alone, for the reason that, if the defendant had a right to erect and maintain the building as a waiting-room, its erection could not be enjoined or its removal as a nuisance ordered, although a portion of it was used for other purposes.

That a waiting-room at or near the point where this building is located is a public convenience is apparent, and, as was said by the supreme court in *Wood v. National Water Works Co.*, 33 Kan. 596, 7 Pac. 237, "the city corporation may make every use of a street which reasonably conduces to the public convenience and enjoyment." We think the city had the right to authorize the erection of the building and that it did so authorize it by the ordinance referred to in finding 6, as follows: "Said grantees may construct and maintain at such points along the line of said railway such depots and waiting-rooms, with stairways leading thereto, as may be necessary and requisite for the accommodation of the public." This, with the permission granted as referred to in finding 9, was sufficient to authorize the defendant to erect the building complained of.

The judgment of the district court is reversed, and said court directed to enter a judgment upon the findings of fact hereinbefore made in favor of the defendant.