No. 44,951

Tom Cooper, *Appellee*, v. City of Great Bend, *Appellant*, (Wilford Marquis, Wilbur Bryant and A. A. McNeive, Board of County Commissioners, Barton County, Kansas, Defendants).

(438 P. 2d 102)

Opinion filed March 9, 1968.

*Edward R. Moses,* of Great Bend, argued the cause and was on the brief for the appellant.

*Hugh D. Mauch,* of Great Bend, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: At issue here is the right of the city of Great Bend to construct a vehicular parking lot in an area in that city described as Lafayette Park. The park consists of a two block tract in the downtown business district of Great Bend upon which the Barton county courthouse is located.

The plaintiff-appellee, a resident of Great Bend, commenced the action, naming as defendants the city of Great Bend and the county commissioners of Barton county. Highly summarized, his petition alleged the defendants had entered into a contract whereby the city undertook to construct and maintain for general public use a parking lot in Lafayette Park; that such park had been dedicated for use as a public park and the proposed parking lot was inconsistent with such purpose; he asked for a declaratory judgment defining the status of the park and the legality of the proposed construction. The defendants answered, in substance denying the tract had been dedicated as a park, and alleging that, if such dedication had occurred, the proposed use was not inconsistent therewith.

Trial to the court resulted in a finding that Lafayette Park had

been dedicated as a public park in accordance with statute and also by way of common-law dedication, that the proposed parking lot had no real relationship to the dedicated purpose, and the court enjoined the proposed construction.

The city of Great Bend alone has appealed from this judgment.

Concededly the proposed parking lot was primarily for use of the downtown business district of Great Bend and the appeal does not challenge the court's finding that the parking lot bore no real relationship to proper park purposes.

The only issue upon appeal is the propriety of the trial court's finding there had been a dedication of the tract as a public park.

The evidence revealed the following history as to Lafayette Park. The city of Great Bend, Barton county, Kansas, was incorporated June 17, 1872. A. A. Hurd was elected mayor. September 6, 1872, at the appropriate federal land office, Mayor Hurd entered and made final payment on section 28, township 19, range 13 west, as a townsite for the city. September 7, 1872, Mayor Hurd conveyed to the Great Bend Town Company all of his interest in said section. On December 18, 1872, Ulysses S. Grant executed a patent conveying all of section 28 to Mayor Hurd and his successors, to be held in trust for the several uses of the occupants of the townsite of Great Bend. On June 27, 1872, an instrument executed by the officers of the Great Bend Town Company was recorded in Ellsworth county (Barton county being attached to Ellsworth county) consisting of a plat of the townsite of the city of Great Bend containing a two block tract marked "Lafayette Park" along with the following.

"Lafayette Park is intended as a public promenade park and is reserved and dedicated for public purposes only upon that express condition and for that use and for no other."

In September, 1873, certain litigation was commenced in the district court of Barton county over the townsite of Great Bend. The Great Bend Town Company filed an action against Mayor Hurd and certain commissioners appointed by him to survey the townsite. Numerous other actions involving titles to the townsite were filed. The nature of the litigation is not entirely clear but, in any event, differences were compromised as reflected in a written agreement between all parties, including the then individual occupants of the townsite. The agreement recognized that the section comprising the townsite had previously been duly surveyed and platted into

lots, blocks, streets, alleys, parks and other public grounds, and it provided that the commissioners should set aside to the occupants the land occupied as of September 6, 1872, the remaining land to be owned one-half by the occupants and one-half by the Great Bend Town Company. On December 23, 1873, the district judge of Barton county, Kansas, entered an order, based upon the foregoing agreement, cancelling the September 7, 1872, deed from the mayor to the town company and directing the commissioners "to proceed forthwith in the Execution of their duties as Commissioners duly appointed under the provisions of Chapter 109 of the General Statutes of the State of Kansas." The commissioners proceeded to apportion the land and filed their report and on February 2, 1874, they filed in the office of the register of deeds of Barton county an additional plat of the city of Great Bend, which plat indicated the two block tract designated as Lafayette Park and contained the following certificate:

"The undersigned do hereby certify that the above is a correct plat of the portion of the city of Great Bend situated in Section Twenty-eight (28), Township Nineteen (19) South, Range Thirteen (13) West. The same having been entered as a town site under the provisions of an Act of Congress relating to towns and villages on the public domain.

"*That LaFayette Park is set aside as a public park.*

"That the streets, alleys, lots and blocks are as marked on said plat and are certified to by J. B. Howard, the surveyor of said town site.

"That the town site has been surveyed, appraised and apportioned in accordance with the provisions of said Act of Congress in Chapter 109 of the General Statutes of Kansas.

"That the statement of lots, blocks and grounds occupied with the names of the occupants together with the value of the improvements thereon as herein set forth is correct. Done at Great Bend, Kansas, February 2, 1874, Signed A. A. Hurd, Mayor of Great Bend. Also signed by T. S. Morton, E. V. Ruger and J. B. Howard." ( Our emphasis. )

This plat was virtually identical to the June 27, 1872, plat.

Since 1873 the tract has been used as a site for the Barton county courthouse, now located in the center portion of the area. In 1950 twenty-five vehicular parking spaces adjacent to the north and east side of the courthouse were constructed. Evidence favorable to appellee was that many years ago there were picnic tables in the area to accommodate farmers and others eating lunch in the park. The area was open to the public and contained as many as seventeen park benches. One summer a tennis net was erected on the grass. A horseshoe pitching court was in use for many years until dis-

placed when the courthouse parking spaces were built. A band-shell, replacing an older band platform, has been in continuous use for summer band concerts each year. In 1966 Easter sunrise services were held in the bandshell. At one time two Civil War cannon with pyramids of cannon balls were located in the park. The Veterans of Foreign Wars installed a cannon as a memorial to all war veterans. The park contains a monument inscribed with the Ten Command-ments. The area contains ninety-eight trees, as well as grass, flowers and shrubs. It has been referred to by inhabitants as a city park. The proposed construction of 133 parking spaces would require removal of some trees and occupy approximately thirty per cent of the entire tract.

The trial court found there had been a statutory as well as a common-law dedication with acceptance by the public. As to the former, the trial court considered the plat of February 2, 1874, a sufficient conveyance.

Appellant contends, first, the filing of this plat did not constitute a valid statutory dedication, arguing the mayor had no authority to plat and dedicate any part of the townsite as a public park and therefore title to the area is still vested in the city of Great Bend by virtue of the patent.

Initially, the mayor of Great Bend, as a corporate authority for the use and benefit of the occupants, entered the townsite as authorized by an Act of Congress entitled "An act for the relief of the inhabitants of cities and towns upon the public lands," approved March 2, 1867, Chapter CLXXVII (14 U. S. St. at Large 541). The act further provided that the execution of such trust as to the disposal of lots in the townsite should be "conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated." (p. 541.)

This act was implemented by our enactment embodied in General Statutes of Kansas, 1868, Chapter 109 (amended in part by Laws, 1870, Chap. CXXXIII), prescribing regulations for the disposal of lots in such townsites. The mayor of an incorporated city was directed to make the entry under the congressional act upon request of any of the occupants and he was authorized to execute deeds. Other provisions authorized the appointment of commissioners to survey the site and, after notice, to set off lots to those entitled thereto.

General Statutes of Kansas, 1868, Chapter 78, Section 1 (now substantially K. S. A. 12-401) provided:

"Whenever any city or town, or an addition to any city or town, shall be laid out, the proprietor or proprietors of such city or town, or addition, shall cause to be made out an accurate map or plat thereof, particularly setting forth and describing: *First,* All the parcels of ground within such city or town, or addition, reserved for public purposes, by their boundaries, course and extent, whether they be intended for avenues, streets, lanes, alleys, commons, or other public uses. . . ."

Black's Law Dictionary (4th ed.) defines *commons* thus:

"Squares; pleasure grounds and spaces or open places for public use or public recreation owned by towns;—in modern usage usually called 'parks.'"

Section 6 of Chapter 78, *supra,* has evolved into K. S. A. 12-406, which provides:

"Such maps and plats of such cities and towns, and additions, made, acknowledged, certified, filed and recorded with the register, shall be a sufficient conveyance to vest the fee of such parcels of land as are therein expressed, named or intended for public uses in the county in which such city or town or addition is situated, in trust and for the uses therein named, expressed or intended, and for no other use or purpose. . . . The provisions of this act shall apply to all maps or plats, heretofore or hereafter made, acknowledged, certified, filed and recorded with any such register. . . ."

Section 11 has remained unchanged and is now K. S. A. 12-411, which provides:

"The plats of all cities and towns which have heretofore been laid off or which may hereafter be laid off on the public lands within this state shall be filed with the register and recorded as aforesaid, which plats shall accurately set forth the streets, squares, alleys, parks and avenues, and the width and extent thereof, which are intended for public use; and when so filed they shall be deemed a sufficient conveyance of such streets, squares, alleys, parks and avenues to such purposes. . . ."

These statutes have always been construed to mean that when public grounds, such as market squares and public squares, are dedicated by city plat the legal title vests in the county in trust for the public, while possession, dominion and control are vested in the city, and further that when property is so dedicated for a specific purpose it cannot ordinarily be put to any other use (*State, ex rel., v. City of Manhattan,* 115 Kan. 794, 225 Pac. 85).

The platting of the townsite of Great Bend was the subject of particular legislation which has never been challenged. Laws of Kansas, 1889, Chapter 24, provided as follows:

"*Be it enacted by the Legislature of the State of Kansas:*

"Section 1. That the official acts of A. A. Hurd as mayor of the city of Great Bend, Kansas, in entering section twenty-eight (28), township nineteen (19), range thirteen (13), west of the sixth principal meridian, and appointing commissioners to survey, plat and apportion such town-site among the occupants thereof, and making deeds therefor, be and the same are hereby legalized, in so far as the acts of said mayor were done in accordance with the spirit of the laws of congress in such cases made and provided, and in accordance with the spirit of the laws of Kansas in such cases made and provided.

"Sec. 2. That the acts of the commissioners appointed by the mayor of Great Bend, Kansas, to survey, plat and apportion said town-site of the city of Great Bend, Kansas, and making assessments to pay the entry-fee and the expenses of surveying, platting and apportioning the townsite among the occupants thereof, in so far as the acts of said commissioners were performed in accordance with the spirit of the laws of congress in such cases made and provided, and in so far as the acts were performed in accordance with the spirit of the laws of Kansas in such cases made and provided, be and the same are hereby legalized.

"Sec. 3. This act shall not apply in any case wherein its application would be inequitable and unjust, nor in any case wherein the spirit of the laws of congress and the laws of the state of Kansas have not been observed in the acts performed by the mayor and the commissioners appointed by such mayor."

Finally, since 1905 we have had a curative statute (now K. S. A. 58-2237) whereby certain defective written instruments of conveyance are validated after being on record ten years.

From all the foregoing we conclude the trial court's finding there was a valid statutory dedication of Lafayette Park must be upheld. Sufficient proprietorship existed and there was no want of authority to do that which was done. We have examined the cases cited by appellant and find none of them out of harmony with this conclusion. In one of those principally relied on, *Winfield Town Company v. Maris*, 11 Kan. 128, we find recognition of the obvious— that the inhabitants of a townsite have the benefit of land set aside as parks or public grounds (p. 151).

The trial court also found there had been a common-law dedication of the park. At 26 C. J. S., Dedication, § 13, we find this discussion:

"A common-law dedication may be express or implied, and no particular form is necessary to the validity of such a dedication . . . in both there must be an appropriation of land by the owner to public uses, in the one case by express manifestation of such purpose, and in the other by some act or course of conduct from which the law will imply such an intent. The substantial difference between the two classes of dedication consists in the mode of proof.

"No particular form or ceremony is necessary to the validity of a common-law dedication. No writing or conveyance is necessary to render the dedication effective. . . . All that is necessary to the validity of a dedication is the assent and intent of the owner to appropriate it to public use; and the decisions of the courts are to the effect that any words or any act or acts clearly manifesting an intent to dedicate, are sufficient. Dedications have been established in every conceivable way by which the intent of the dedicator could be evinced." (pp. 420-423.)

The doctrine of common-law dedication has long been recognized in this state (see *Kasper v. Miller,* 159 Kan. 488, 156 P. 2d 550; *City of Kingman v. Wagner,* 168 Kan. 558, 213 P. 2d 979, and cases cited therein). Whether an owner of land intended to dedicate it to public use is a question of fact (*City of Russell v. Russell County B. & L. Assn.,* 154 Kan. 154, 118 P. 2d 121; see, also, *Cheney v. Anderson,* 72 Kan. 696, 84 Pac. 137).

Intent to dedicate the tract in question as a public park is shown as early as the June 27, 1872, plat by the Great Bend Town Company, wherein Lafayette Park was platted and described as a public promenade park. Although defective as a statutory dedication, because the mayor's deed conveying title to the town company was later annulled by court action, the plat nonetheless evidenced intent. The same intent was evidenced by the February 2, 1874, plat and by subsequent continuous user for the indicated purpose, providing sufficient support for the trial court's finding.

No error appears in the judgment appealed from and it is affirmed.

APPROVED BY THE COURT.