(571 P.2d 345)

No. 48,528

LOYD HELMLEY, Individually and as Representative of All That Class of Gas Royalty Owners Under Ashland Oil, Inc., Oil and Gas Leases in Hugoton-Anadarko Area, *Appellee and Cross-Appellant,* v. ASHLAND OIL, INC., *Appellant and Cross-Appellee.*

Petition for review denied October 7, 1977.

Opinion filed August 5, 1977.

*Gerald Sawatzky* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, and *Charles N. Henson* of Eidson, Lewis, Porter & Haynes, of Topeka, for the appellant and cross-appellee.

*Gordon M. Penny* of Chapin & Penny, of Medicine Lodge, and *Robert D. Ochs* of Fisher, Ralston & Ochs, of Topeka, for the appellee and cross-appellant.

Before Swinehart, P.J., Rees and Parks, JJ.

Swinehart, J.: This is a class action brought on behalf of approximately 1,440 oil and gas royalty owners against the producer, Ashland Oil, Inc., seeking recovery of interest on certain "suspense" monies. The trial court certified the suit as a class action and allowed recovery of interest by each member at the rate of 6%. The trial court also allowed Ashland Oil, Inc. (defendant) recoupment of alleged royalty overpayments to some class members.

Except for the parties involved, the plaintiff's credentials as a class representative, the recoupment issue, and other minor differences, this suit is identical in legal issues and factual situations to those presented in *Gray v. Amoco Production Co.,* 1 Kan.App.2d 338, 564 P.2d 579 (petition for review granted July 12, 1977); *Coffey v. Atlantic Richfield Co.,* unpub. opinion, No. 48,386, (May 20, 1977) (petition for review granted July 12, 1977); and *Shutts, Executor v. Phillips Petroleum Co.,* 222 Kan. 527, 567 P.2d 1292.

The issues raised by this defendant which were decided in *Gray, Coffey* and *Shutts* have to do with (1) the allowance of interest on the "suspense" monies, (2) the validity of the defense of accord and satisfaction, and (3) the commonality requirement of class actions. Summarized, *Gray, Coffey* and *Shutts* held that interest was properly granted under principles of equity; accord and satisfaction was not a legitimate defense because there had not been full disclosure, and therefore no meeting of the minds; and the class was properly certified because questions of law or fact existed which were common to the class (K.S.A. 60-223[a] [2]). Those results control here, and we will not attempt to add to *Gray, Coffey* and *Shutts* on the issues therein decided.

This action, however, presents several additional issues which were not decided by *Gray, Coffey,* and *Shutts.* The first such issue has to do with another aspect of the class action portion of this suit. In essence, defendant urges the class was improperly certified because the claims or defenses of the representative plaintiff were not typical of the claims or defenses of the class, and because the named plaintiff was not a proper representative of the class.

To fully understand defendant's argument, additional facts must be filled in. Loyd Helmley, the named plaintiff and desig-

nated class representative, is an Arizona resident. His father, a resident of Barber county, died March 22, 1973, and at the time of his death, he was a royalty owner. As a devisee and legatee, Loyd succeeded to and was assigned a one-half interest in his father's mineral interests. The order of final settlement of his father's estate was entered August 2, 1974. Loyd was not a royalty owner at the time defendant retained the "suspense" monies for which interest is here claimed. Loyd's only interest in this case arises out of his succession to his father's royalty interests.

Defendant's payment of "suspense" royalties attributable to the land owned by Loyd's father was made by check dated October 26, 1973, which was endorsed and negotiated by the executor of the father's estate—not by Loyd.

Further, neither Loyd nor his father was one of those persons to whom defendant made overpayment of royalties in the 1954 to 1958 period. There also is no evidence that Loyd's father ever received a letter from defendant advising him that by reason of Federal Power Commission proceedings, "suspense" royalties were being held. Many class members received such letters.

Because Loyd Helmley's position so differs from the average class member, defendant insists that he cannot fairly and adequately protect the interests of the class and that his claims or defenses differ from those claims or defenses of the class.

The controlling Kansas statute, K.S.A. 60-223, provides in pertinent part:

". . . (a) *Prerequisites to a class action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Our discussion of K.S.A. 60-223 will, for the most part, be based upon federal cases interpreting the federal rule on class actions, Federal Rule of Civil Procedure No. 23.

The elements to be considered in determining the "typicality" requirement of 60-223(a)(3) are often very similar in nature to those elements considered when determining representative status pursuant to 60-223(a)(4). (7 Wright & Miller, Federal Practice and Procedure, Civil § 1764, pp. 611-612.) In this case, we feel the two requirements of "(a)(3)" and "(a)(4)" overlap, and will treat them accordingly. We are more interested in locating

the necessary elements for consideration than we are in labeling those elements as being either "(a)(3)" or "(a)(4)."

What are the elements to be examined when determining whether a named plaintiff can properly represent the class? We first note that this question by its nature is often a difficult one to resolve. Accordingly, a trial judge has to be afforded substantial discretion in the decision-making process.

Perhaps the most cogent and precise statement of what satisfies the representation requirement was provided by the Second Circuit in *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir. 1968) as follows:

"What are the ingredients that enable one to be termed 'an adequate representative of the class?' To be sure, an essential concomitant of adequate representation is that the party's attorney be qualified, experienced and generally able to conduct the proposed litigation. Additionally, it is necessary to eliminate so far as possible the likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to those of the remainder of the class. . . . Courts, on occasion, have also required that the interest of the representative party be coextensive with the interest of the entire class, but this amounts to little more than an alternative way of stating that the plaintiff's claim must be typical of those of the entire class. . . . However, we believe that reliance on quantitative elements to determine adequacy of representation, as was done by the District Court, is unwarranted. Language to the effect that a small number of claimants cannot adequately represent an entire class has frequently been cited, . . . but we fail to understand the utility of this approach. If class suits could only be maintained in instances where all or a majority of the class appeared, the usefulness of the procedure would be severely curtailed. As has previously been stated, one of the primary functions of the class suit is to provide 'a device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group.' . . ." (p. 562-563.)

From this, various elements requiring consideration have been gleaned. Summarized, those elements are: (1) adequate, competent counsel; (2) no collusive suit; (3) no conflicting or antagonistic interests between the representative and class members; (4) a coextensiveness of the representative's interests with those of the class members; (5) quality of the named representative, not quantity; and (6) the extent of the named representative's interest in the suit's outcome. (See, generally, 7 Wright & Miller, Federal Practice and Procedure, Civil §§ 1765-1769, pp. 615-657.)

We feel the elements requiring consideration here are (3) and (4)—*i.e.,* the "antagonistic or conflicting interests" and "coextensiveness of interests" requirements.

Defendant seems to suggest that material factual differences exist between the named plaintiff and other class members, thus creating inherently antagonistic and conflicting positions between them. We recognize that some differences exist between Loyd and other members of the class. However, more than that must be shown. Defendant must show that a conflict exists which goes to the very subject matter of the litigation before Loyd's representative status can be defeated. (*Berman v. Narragansett Racing Association,* 414 F.2d 311, 317 [1st Cir. 1969]; *Davy v. Sullivan,* 354 F.Supp. 1320, 1326 [M.D.Ala. 1973].)

Does a conflict exist here which goes to the subject matter of this litigation? We think not. Plaintiff's claim for interest on the "suspense" royalties is the heart of this action. That is what Loyd seeks, and that is what the class members seek. Whether or not Loyd was a royalty owner when the monies were retained by defendant is irrelevant. He now is a royalty owner seeking interest and representing a class of royalty owners seeking interest. The fact that defendant does not have a recoupment claim against Loyd is a distinction between Loyd and the class members which we feel is insignificant. That distinction does not relate to the general subject matter of this suit, *i.e.,* the claim for interest, and therefore should not defeat Loyd's representative status.

The other element requiring consideration is that of coextensiveness of interests. As the language from *Eisen,* supra, indicates, this element has often been viewed as part of the typicality requirement of 60-223($a$)(3). This element has also been viewed as the antithesis of the requirement that the interests of the representative and class members not be antagonistic. Simply stated, if the representative's interests are coextensive with those of the class, they will not be considered as antagonistic.

The coextensiveness requirement does not mandate that the positions of the representative and the class be identical; rather, only that the representative and class members "share common objectives and legal or factual positions." (7 Wright & Miller, Federal Practice and Procedure, Civil § 1769, p. 655.) The "coextensiveness of interests" element surfaced in the recent case of *Horn v. Associated Wholesale Grocers, Inc.,* 555 F.2d 270 (10th Cir. 1977), where the 10th Circuit adopted a liberal approach. There, the named representative's personal claim for discrimination had failed. Nonetheless, the court allowed him to represent

the class of discriminatees because he had a "present, past and future interest in the outcome of the case." Horn sought injunctive relief halting discrimination, as did the class members. Thus, there was a common objective shared by both the representative and the class. While *Horn* sought only injunctive relief (here the class seeks monetary relief), we feel the case evidences a philosophy that the coextensiveness of interests requirement is not to be strictly construed.

The primary interests and objectives of this class are to recover interest on the "suspense" monies. Both Loyd and the class members share that interest. The difficulty arises because Loyd does not have a recoupment claim pending against him, as some of the class members do. This fact alone, we feel, does not destroy Loyd's representative status. We regard this distinction as being insignificant because it does not interfere with the common interest or objective of recovering interest on the "suspense" monies.

The law does not require that a named plaintiff be the perfect class member, or even the best available.

It is our conclusion that the factual position of Loyd Helmley is not sufficiently different from that of the class members so as to warrant the disqualification of Loyd as a proper class representative. The trial court acted properly in naming Loyd the class representative.

The final point on this appeal requiring resolution has to do with defendant's recoupment claims. Again, a brief factual background is necessary for a full understanding of the problem presented.

During the period 1954 to 1958, many royalty owners (now members of this class) were overpaid because of a Kansas Corporation Commission order requiring royalty payments to be made which were higher than the original royalty contract payments. The K.C.C. order was denounced by the United States Supreme Court in *Cities Service v. State Comm'n,* 355 U.S. 391, 2 L.Ed.2d 355, 78 S.Ct. 381, decided January 20, 1958. Shortly after *Cities Service* was decided, the overpaid royalty owners received letters from defendant's predecessor advising them that "[w]hile we are not at this time requesting a refund of any overpayments which might have been made to you since January 1, 1954, we reserve the right to do so at such time as we deem such action to

be warranted." Refund was never sought until October 16, 1974, when defendant filed its answer herein stating in part that "some, but not all, alleged members of the alleged class, should have any recovery reduced or eliminated by reason of overpayment of royalties for the period 1954 to 1958." The trial court allowed defendant's recoupment claims, and the class has cross-appealed that finding.

There is no question but that the defendant's claims for over-payments are barred by the statute of limitations. However, this does not prevent defendant from using the claims as a recoupment. A recent Kansas Supreme Court decision, addressing this issue, found the oil company entitled to recoupment. See *Waechter v. Amoco Production Co.,* 217 Kan. 489, 537 P.2d 228.

*Waechter* allowed the oil company to recover overpayments solely on the common law recoupment theory. To so recover, the recoupment claim "must grow out of the identical transaction that furnishes the plaintiff's cause of action." (20 Am.Jur.2d, Counterclaim, Recoupment, and Setoff § 11, p. 235.) The "identical transaction" requirement was satisfied in *Waechter,* and is satisfied here, because all claims stem from the original royalty lease contracts. (*Waechter v. Amoco Production Co.,* supra, p. 520-521.) In other words, plaintiff's claims for interest on "suspense" monies originate from the royalty agreements, and defendant's recoupment claims originate from the same royalty agreements; therefore, the "identical transaction" requirement is satisfied.

We therefore conclude that the trial court was correct in allowing defendant's recoupment claims because the "identical transaction" requirement was satisfied.

Loyd Helmley has cross-appealed, claiming that the trial court's allowance of 6% interest was not sufficient. This question was just decided favorably for cross-appellant. See *Shutts, Executor v. Phillips Petroleum Co.,* supra. Based on the holding in *Shutts,* we find here that cross-appellant and the members of the class he represents should have judgment against the defendant as of January 6, 1976, for such sum as represents 7% per annum simple interest on the "suspense" royalties from the date of their receipt by defendant until October 1, 1970 (the effective date of Federal Power Commission opinion No. 586), plus 8% per annum simple interest on the "suspense" royalties from October

1, 1970, to the date of payout in 1973, plus 8% per annum simple interest on the unpaid principal sum (accrued interest on the date of payout) from the date of payout in 1973 to January 6, 1976. The class is further entitled to interest upon such judgment sum from January 6, 1976, until paid, pursuant to K.S.A. 16-204.

Accordingly, the judgment of the lower court is affirmed in part and modified as to the rate of interest allowed. The case is remanded for further proceedings consistent with this opinion.