(574 P.2d 971)

No. 49,125

MAURICE R. CONNOLLY and JAMES L. GEISENDORF, on behalf of themselves and all others similarly situated, *Appellees,* v. ROBERT F. FROBENIUS, individually and as president of The Union Cemeteries Association, and Union Cemeteries Association, Inc., and as incorporator and president of Roselawn Service Company, Inc.; UNION CEMETERIES ASSOCIATION, INC.; ROSELAWN SERVICE COMPANY, INC.; and THE UNION CEMETERIES ASSOCIATION, *Appellants.*

Opinion filed January 13, 1978. 

*Aubrey G. Linville* and *Bruce Keplinger* of Clark, Mize & Linville, Chartered, of Salina, for the appellants.

*John Q. Royce* of Hampton, Royce, Engleman & Nelson, of Salina, for the appellees.

Before HARMAN, C.J.[*], ABBOTT and SPENCER, JJ.

---

[*] This opinion was approved by HARMAN, C.J., prior to his retirement.

SPENCER, J.: The named plaintiffs, as owners of lots and graves in the cemetery operated by the Union Cemeteries Association, Inc., Salina, Kansas, and as owners of crypts in the Mausoleum Williamsburg located in that cemetery, commenced this class action on behalf of themselves and all other persons similarly situated to permanently enjoin the construction and operation of a mortuary and other commercial development on land platted and dedicated as a cemetery. The injunction was granted and defendants have appealed.

The facts in this case have been stipulated and are essentially as follows:

Defendants Union Cemeteries Association and Union Cemeteries Association, Inc., are one and the same cemetery corporation, duly organized under the laws of Kansas on April 27, 1927. The cemetery operated by the corporation has been at various times referred to as "Memorial Park Cemeteries," "Memorial Park Gardens," "Roselawn Memorial Park Cemetery," and "Roselawn Cemetery," but all relate to one cemetery located on the real estate hereinafter described.

On July 21, 1927, the cemetery corporation caused a plat of the northeast quarter of the northeast quarter of section nineteen, township fourteen south, range two, west of the Sixth Principal Meridian, containing forty acres more or less, to be placed of record in the office of the register of deeds, Saline County, Kansas. The certificate to that plat, executed and acknowledged by the then president and secretary on behalf of the corporation, is in part as follows:

". . . The Union Cemeteries Assn. of Ottawa, Franklin County, Kansas, is the owner of the following described property, to wit;

"[Real estate description] and have the same to be subdivided into Lots and Sections, with Streets, Avenues and Walks for the purposes of Sepulture.

"The foregoing described tract of land as subdivided and platted is dedicated to the purpose herein mentioned and the faith of the organization is pledged for its preservation and improvement. . . ."

Following the filing of the plat, the corporation advertised the area as a park plan cemetery and offered for sale and sold lots in the cemetery to members of the public. At the time of this suit, more than 6,000 persons had purchased lots or plots within the cemetery and more than 3,500 burials had been made therein.

Defendant Robert F. Frobenius first acquired an interest in the cemetery corporation in April, 1952. At the time this action was

commenced, he was president of the corporation and, together with members of his immediate family, owned all of the issued and outstanding stock of the cemetery corporation. Frobenius is also president of defendant Roselawn Service Company, Inc., which was incorporated under date of February 25, 1974, and he, together with members of his immediate family, own all of the issued and outstanding stock of that corporation.

On October 20, 1959, the north 200 feet of the 40 acres in question were annexed into the city of Salina and, in 1960, the corporation constructed a mausoleum on the cemetery.

On July 25, 1960, plaintiff Geisendorf purchased a crypt in the mausoleum and received a deed which provided that the purchase was subject to the rules and regulations of the corporation, then existing or thereafter adopted.

On September 19, 1972, the cemetery corporation caused a replat of the north 200 feet of the 40 acres (that portion previously annexed into the city) to be filed in the office of the register of deeds. This area comprises lots one through eight, block one, on the replat of Union Cemetery Addition to Salina, Kansas. On October 5, 1972, the city rezoned this area to authorize, among other commercial uses, the construction and operation of a mortuary. Plaintiffs appeared at that meeting in opposition to the rezoning, but did not appeal from the results.

On March 13, 1973, plaintiff Connolly purchased cemetery lots and received a deed which was also subject to the rules and regulations of the corporation, then existing or thereafter adopted.

At a meeting of the board of directors of the cemetery corporation held November 16, 1973, the corporation agreed to sell to the defendant Frobenius and his wife, lot seven, block one, of the replat of Union Cemetery Addition, for the sum of $5,500. The agreed consideration was handled by means of a bookkeeping entry made on the books of the cemetery corporation, reducing notes payable by the corporation to the defendant Frobenius and his wife by that amount. No part of the recited consideration was deposited with the permanent maintenance fund of the cemetery. However, that deed was never executed by the corporation and, on March 9, 1974, the corporation executed a deed for the same property to Roselawn Service Company, Inc., pursuant to an agreement by defendant Frobenius to exchange that property at the agreed value of $33,000 for 33,000 shares of stock of Roselawn Service Company, Inc.

On May 21, 1974, a building permit was issued for the construction of a mortuary on lot seven, and construction of that building commenced on or about May 23, 1974. This action was commenced on June 6, 1974, and from the record before us it appears that the work on the mortuary continued and that the building is now completed and is being operated as a licensed mortuary. The record also reveals that the cemetery, mausoleum, and mortuary are listed for tax assessment purposes in Saline County.

On August 16, 1974, it was determined by the trial court that this action be maintained as a class action and that letter notice of the action be given to all members of the class whose names and addresses could be reasonably ascertained. Following such notice, twenty-seven persons joined the action as plaintiffs.

While the main thrust of this appeal is the legality of the mortuary on the land in question, defendants have presented other issues which we elect to give prior consideration.

Defendants argue that this is not a proper class action because Connolly and Geisendorf are not proper representatives for the class, in that their claims are not typical under K.S.A. 60-223(a)(3), and they do not adequately represent the class under K.S.A. 60-223(a)(4).

It is said that plaintiffs are moved to litigation by motives which are unique unto themselves; that Geisendorf is the owner of a mortuary which competes with defendants and he seeks to restrain that competition; that Connolly was involved in a dispute with defendant Frobenius over the placing of a monument at Connolly's wife's grave and is motivated by personal animosity.

K.S.A. 60-223(a) provides in part:

"One or more members of a class may sue or be sued as representative parties on behalf of all only if . . . (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

Defendants refer to four factors enumerated in 3B Moore's Federal Practice, § 23.07(1) at 23-352-353 for testing adequate representation. The factors relied upon as indicative that Connolly and Geisendorf could not adequately represent the class are (1) coextensive interests with other members of the class, and (2) proportion of the representatives to the total membership of the class.

Defendants' principal argument is that there is no coextensiveness of interest in this case. They base their argument on the claim that "coextensive" means "having the same scope or boundaries."

In *Helmley v. Ashland Oil, Inc.*, 1 Kan. App. 2d 532, 571 P.2d 345, rev. denied, 222 Kan. 749, 571 P.2d 345, this court considered the adequacy of the representation requirements of K.S.A. 60-223(*a*)(3) and (4). Six factors were listed as determinative of whether the representation was adequate. Coextensiveness of interest is one of those recognized factors. In the course of the opinion, it was stated:

"The coextensiveness requirement does not mandate that the positions of the representative and the class be identical; rather, only that the representative and class members 'share common objectives and legal or factual positions.' (7 Wright & Miller, Federal Practice and Procedure, Civil § 1769, p. 655.) . . ." (1 Kan. App. 2d at 536.)

Moreover, it has specifically been held that the mere fact that the representative has interests which go beyond those of the class is not enough to defeat the action, as long as the representative has interests which are at least coextensive with the class interest. *First American Corporation v. Foster,* 51 F.R.D. 248 (N.D. Ga. 1970); *Bucha v. Illinois High School Association,* 351 F. Supp. 69 (N.D. Ill. 1972). See also, 7 Wright & Miller, Federal Practice and Procedure, Civil § 1768, pp. 646-647, where it is stated:

". . . The main consideration is 'the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class, so as to insure them due process.' Therefore the fact that plaintiff may have an ulterior motive in bringing the action . . . does not in and of itself demonstrate that his interests are antagonistic to those of the class."

Although Connolly and Geisendorf may have other interests in bringing this action, it is undisputed that they are lot or crypt owners; that each has a relative buried in the cemetery; and that the subject matter of the action is the use made of the cemetery land.

*Helmley* also noted as a factor "quality of the named representative, not quantity." (1 Kan. App. 2d at 535.) As stated in 7 Wright & Miller, Federal Practice and Procedure, Civil § 1766, p. 631, most courts now reject the view that the proportion of the representatives to the total class is an element in determining whether a class action is proper. Most courts now assess the

character of the representation rather than looking to numbers alone.

Defendants also argue that the class action was unnecessary since an injunction granted one person would have the same effect as that granted to the entire class. K.S.A. 60-223(*b*) provides in part:

"An action may be maintained as a class action if the prerequisites of subdivision (*a*) are satisfied, and in addition:

"(1) The prosecution of separate actions by or against individual members of the class would create a risk of . . . (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . ."

The trial court found that this action was maintainable under both K.S.A. 60-223(*b*)(1)(B) and (*b*)(2). Many recent decisions, in an attempt to reduce the number of class actions, and no doubt in response to the abuse to which they have been put, have denied class treatment when confronted with class action's seeking only declaratory or injunctive relief on the ground that an award for plaintiff alone necessarily would benefit all the class members. See 7 Wright & Miller, Federal Practice and Procedure (1976 Supp.) § 1754, p. 61, and cases cited therein. There may be instances where such a denial would be proper, even though the statute would otherwise seem to allow the class. As *Helmley* noted, the trial judge must be afforded substantial discretion in the decision-making process as to the maintenance of a class action. (1 Kan. App. 2d at 535.) With this in mind, we hold that the trial court did not err in conducting this matter as a class action.

In support of their motion for new trial, defendants offered the affidavit of H. D. Bledsoe, vice president of the National Association of Cemeteries, which indicates that the national trend is to locate mortuaries in cemeteries, or immediately adjacent thereto, as a matter of convenience for the public. Defendants suggest error by the trial court in refusing to consider that affidavit.

Whether to grant a new trial for newly discovered evidence is a matter within the sound discretion of the trial court. The burden

is on the party seeking the new trial to show that the new evidence could not with reasonable diligence have been produced at trial. K.S.A. 60-259(*a*); *State v. Johnson,* 222 Kan. 465, 471, 565 P.2d 993; *McHugh v. City of Wichita,* 1 Kan. App. 2d 180, 184, 563 P.2d 497, rev. denied, 221 Kan. 757. A new trial should not be granted unless the new evidence is of such materiality as to be likely to produce a different result upon re-trial. *State v. Johnson,* supra, Syl. 3.

The proffered affidavit was of questionable relevance, and the showing made by defendants that they could not have secured the evidence contained in that affidavit prior to trial was not clearly convincing. Under the circumstances, we find no abuse of discretion by the trial court in not considering the contents of the affidavit and in denying the new trial. See *McHugh v. City of Wichita,* supra.

Defendants make note of the fact that the land in question was rezoned by the city of Salina on October 5, 1972; that plaintiffs took no action to challenge the rezoning; and that the present action was not filed until one and one-half years later, two weeks after construction had begun on the mortuary. They argue that the delay constitutes laches and that plaintiffs are estopped to deny the validity of the rezoning, such being a matter of legislative record, citing 28 Am. Jur. 2d, Estoppel and Waiver § 2, p. 600. Plaintiffs treat this argument rather lightly, however, contending that there was nothing for them to contest until the construction began. This is not correct. Under K.S.A. 12-712, plaintiffs could have brought an action to challenge the reasonableness of the zoning ordinance. As the land was dedicated for "purposes of sepulture," it might well be that the city was without authority to authorize other uses merely by rezoning it to accommodate such other uses. *Cooper v. City of Great Bend,* 200 Kan. 590, 438 P.2d 102; *The State, ex rel., v. City of Manhattan,* 115 Kan. 794, 225 Pac. 85. The zoning was for "office district" which included a mortuary. May it reasonably be argued that any type of office building may be located on the land, simply because the city has zoned it that way? Such would be the result if plaintiffs were estopped to challenge uses not within the ambit of "purposes of sepulture."

It has been held that, as to lands dedicated to the public and vested in the control of the city, neither laches nor estoppel will lie.

"Those rights, duties, and privileges conferred and imposed upon a municipal corporation exclusively for the public benefit cannot ordinarily be lost through nonuse, laches, estoppel, or adverse possession, and statutes of limitation are not ordinarily applicable thereto." *Douglas County v. City of Lawrence*, 102 Kan. 656, Syl. 4, 171 Pac. 610.

See also, *Devine v. City of Seward*, 174 Kan. 734, 737, 258 P.2d 302. Although plaintiffs here are private parties, the rule against laches and estoppel in the defense of a dedication should apply equally to them. If not, an important element in the protection of dedicated land might be lost, for it is not uncommon for the city government to be the advocate in the alteration of a dedicated use, rather than a defender of it. See *e.g. Cooper v. City of Great Bend,* supra. On the other hand, it has specifically been said that "[a]ctions seeking to enjoin interference with dedicated property will be barred by laches if not brought with reasonable promptitude after notice of such interference." 26 C.J.S., Dedication § 73, p. 570. As noted, plaintiffs had notice of the rezoning for some time but did nothing. The action was not filed until construction on the mortuary had begun. Defendants had expended considerable time and money by that time. However, defendants are not here with completely clean hands. We are informed that the mortuary is now complete, which can only mean that the building was completed after notice of the suit. Although no temporary injunction was sought, can defendants properly "shore up" their laches argument by pointing to a now complete building? Defendants correctly note that the doctrine of laches is equitable, depends upon all the surrounding circumstances, and must be determined on a case-by-case basis. *Clark v. Chipman,* 212 Kan. 259, 510 P.2d 1257. We hold that the trial court did not err in failing to apply the doctrine of laches or estoppel to defeat plaintiffs' claim.

We are reminded that the deeds executed to the plaintiffs and all members of the class provided that the recipients were taking the deeds subject to the rules and regulations of the cemetery corporation, then existing and thereafter adopted. Defendants direct attention to the corporate charter which initially provided for "[b]uilding & maintaining a Park Plan Cemetery & selling lots in same for the purpose of sepulture," but which was amended under date of December 20, 1954, and again under date

of July 22, 1971, to finally authorize the corporation to "maintain cemeteries, mortuaries, mausoleums, vaults, chapels and other buildings and improvements for the protection, preparation for the burial . ·. . of the dead; the construction, purchase and operation of greenhouses, conservatories, maintenance buildings and office buildings to include collecting departments, savings and loans, insurance, trust departments and other things necessary and incidental to laying out, paving its streets, collection of accounts . . . ornamentation, maintenance and management of such cemetery . . . ." Defendants suggest that plaintiffs are bound by the rules of the corporation set forth in the charter, as amended, and cannot now seek to enjoin the construction of a mortuary or other buildings incidental to the cemetery business.

It is to be noted that plaintiffs do not here challenge the power of the corporation to operate a mortuary, but rather the power to do so on land dedicated as a cemetery. Taken to its logical conclusion, the defendants' argument would seem to indicate that the owners of lots and crypts in the cemetery would be bound to accept whatever enterprise the corporate directors might elect to pursue on the dedicated premises, however remote from the ordinary operation and maintenance of the cemetery itself.

Imprinted on the reverse side of each of the deeds in question is the general rule that "the owners of Roselawn Memorial Park, in order to preserve and maintain uniformity, harmony and beauty, to provide for stability and against decay and deterioration, to safeguard the sanctity of each lot or grave against future inefficient care, reserves for itself, its successors and assigns, the right to make any and all rules, regulations, limitations and restrictions, that it may deem necessary to protect and provide for the future welfare of Roselawn Memorial Park . . . all of which it binds itself to do." Although the owner of a cemetery lot may be bound by reasonable and uniform rules and regulations established by the cemetery corporation (14 Am. Jur. 2d, Cemeteries § 38, p. 745), such does not preclude a challenge to any use of the land dedicated for cemetery purposes, deemed to be inconsistent with those purposes. The California case cited by defendants (*Wing v. Forest Lawn Cemetery Assn.*, 15 Cal. 2d 472, 101 P.2d 1099 [1940]), which is discussed in more detail in following portions of this opinion, is distinguishable on this point as

involving an attempt to read into the deed a restrictive covenant prohibiting the mortuary on land owned by the cemetery association-grantor. It is true that the rule in Kansas is that restrictive covenants are to be construed strictly with any doubt being resolved in favor of the free use of the land. *South Shore Homes Ass'n v. Holland Holiday's,* 219 Kan. 744, 549 P.2d 1035. However, that is not the rule as to dedication. Far from supporting defendants' position here, *City of Russell v. Russell County B. & L. Assn.,* 154 Kan. 154, 159, 118 P.2d 121, provides that, in matters of dedication, all ambiguities must be resolved against the dedicator and in favor of the public.

Defendants say there is no evidence in the record of any injury caused the plaintiffs in their capacity as cemetery lot owners by the operation of a mortuary, and in such situation, the granting of an injunction is improper. We accept the rule that injunctive relief will not ordinarily be granted without a showing of substantial and positive injury. *Dill v. Excel Packing Co.,* 183 Kan. 513, 331 P.2d 539. However, in 43 C.J.S., Injunctions § 22, p. 440, it is stated:

". . . [T]here is an obvious distinction between injury and damage that is not always observed in dealing with the question of injunctive relief, and courts of equity will interpose in a proper case to protect a right, without any reference to the question of actual damage . . . ."

In 42 Am. Jur. 2d, Injunctions § 29, p. 765, it is stated:

". . . [T]here is an obvious distinction between injury and damage, which is not always observed in dealing with the question of injunctive relief. Whatever invades a man's right of dominion over his property is a legal injury, whether damage ensues or not. It is a right for the violation of which the law imports damage, and courts of equity will interpose in a proper case to protect the right, without any reference to the question of actual damage; a showing of specific money damage is not necessary to support an injunction."

Defendants suggest one example of injury is that plaintiffs have an interest in property upon which the alleged unauthorized business is being conducted. That is precisely the issue. In every dedication of property, there are three interested parties—the dedicator, the general public, and property owners with special interests, such as owners of lots. *The State, ex rel., v. City of Manhattan,* supra. There is no doubt in the minds of this court that the owners of lots in a dedicated cemetery, as well as the owners of crypts in a mausoleum situated on that cemetery, are possessed of sufficient special interests to entitle them to seek

relief from any unauthorized use to be made of the cemetery by means of injunction. See *Hagaman v. Dittmar,* 24 Kan. 42.

We come now to the vital issue on this appeal. May a mortuary properly be constructed and operated on land dedicated "for purposes of sepulture."

Admittedly, the precise issue here presented has not previously been before the appellate courts of this state. Although it is stipulated in this case that at least four other mortuaries in Kansas are located adjacent to or within the boundaries of cemeteries, the circumstances by virtue of which those mortuaries exist are not revealed.

It must be borne in mind that the real estate here involved was platted and dedicated on April 23, 1927, for the purpose of building and maintaining a park plan cemetery and selling lots therein for the "purpose of sepulture" and for no other stated purpose. Defendants correctly suggest that, whether a particular use amounts to a diversion from the purpose for which the dedication was made, depends on the circumstances of the dedication, but any use is authorized that is fairly within the terms of the dedication and reasonably serves to make the property fit for enjoyment by the public in the manner contemplated. Also, the dedicator is presumed to have intended the property to be used by the public, within the limits of the dedication, in such a way as is most convenient and comfortable to the public, and this is true not only to usages known at the time of the dedication, but also to those uses justified by change of conditions. They cite 23 Am. Jur. 2d, Dedication § 67, pp. 57-58, wherein it is stated:

"When land is dedicated for a special and limited use, use for any other purpose is unauthorized . . . . In any case, however, such use is authorized as is fairly within the terms of the dedication and reasonably serves to fit the property for enjoyment by the public in the manner contemplated. The dedicator is presumed to have intended the property to be used by the public, within the limitations of the dedication, in such way as will be most convenient and comfortable and according to not only the properties and usages known at the time of the dedication, but also to those justified by lapse of time and change of conditions."

See also, 14 Am. Jur. 2d, Cemeteries § 19, pp. 723-724.

There are conflicting views as to whether a mortuary is a use which may properly be made of land dedicated for burial purposes. The state of California, as reported in *Wing v. Forest Lawn Cemetery Assn.,* supra, and *Sunset View Cemetery Assn. v.*

*Kraintz,* 196 Cal. App. 2d 115, 16 Cal. Rptr. 317 (1961), clearly adheres to the position that a cemetery corporation empowered to hold land "exclusively as a cemetery for the burial of the dead" may operate a mortuary thereon as a use incidental to the use authorized by statute. In *Wing,* the California court noted cases which had authorized such operations as greenhouses, vault and grave marker production and sale, and concluded that a mortuary was a much more intimate incident of burial than any of those. See Annotation, 130 A.L.R. 130. The rule adopted in *Wing* is:

". . . [C]emetery lands may be used for such purposes as are incident to the burial of the dead, so long as the rights of the lot owners in their own lots and their rights of egress and ingress are not invaded. [Citations omitted.]" (15 Cal. 2d at 478.)

An opposite view appears to have been adopted by the state of Georgia in the case of *Greenwood Cemetery, Inc. v. MacNeill,* 213 Ga. 141, 97 S.E.2d 121 (1957), wherein it was held:

". . . [T]he property of Greenwood Cemetery, Incorporated, here involved, including the proposed site of the mortuary, is dedicated for cemetery purposes . . . . When a tract of land has been dedicated as a cemetery, it is perpetually devoted to the burial of the dead and may not be appropriated to any other purpose . . . . 'The owner of the fee is subject to a trust for the benefit of those entitled to use the land as a place of burial. He has no right to recover the use of the land for any enjoyment or purpose of his own. Again, while the owner of a cemetery has a perfect right to sell and convey it as such, he can do nothing which interferes with the use of the land as a cemetery . . . .' 10 Am. Jur. 491, § 8 . . . .
". . . [I]t must be held that the property in question can only be used as a place for burying the dead, and any other attempted use is an unlawful attempt to appropriate property dedicated for cemetery purposes to other uses, which cannot be done. It therefore follows that the judgment of the court below enjoining the construction of the mortuary here involved was not error." (213 Ga. at 142-143.)

It was apparently on the basis of the Georgia authority that the trial court entered its findings of fact and conclusions of law.

The Kansas courts have often stated the general rule that property dedicated for a particular purpose cannot be used for any other purpose. Some cases have involved clear deviations. In *Cooper v. City of Great Bend,* supra, it was held that the city could not construct a parking lot on land dedicated as a park. In *Comm'rs of Wyandotte Co. v. Presbyterian Church,* 30 Kan. 620, 1 Pac. 109, it was held that land dedicated for church purposes could not be used for a courthouse. In *State, ex rel., v. City of Kansas City,* 189 Kan. 728, 371 P.2d 161, it was held that land

dedicated as a park may not be used for a library and school offices and that, vice versa, land dedicated for school purposes may not be used as a park. It has also been held that land dedicated for a particular purpose cannot be sold to a private party, and the proceeds then used for the dedicated purposes elsewhere. See *Comm'rs of Franklin Co. v. Lathrop,* 9 Kan. 453; *The State, ex rel., v. City of Manhattan,* supra.

As to incidental use, the court has recognized that land dedicated as a street may be put to any incidental use "which reasonably conduces to the public convenience and enjoyment. . . ." *Wood v. National Water Works Co.,* 33 Kan. (2d ed.) 590, 596, 7 Pac. 233; *Cummins v. Summunduwot Lodge,* 9 Kan. App. 153, 58 Pac. 486.

Kansas cases involving cemeteries have been limited to statements of the general rule.

". . . All lots and tracts of land contained within the boundaries of a cemetery platted by a cemetery corporation are dedicated exclusively for burial purposes and cannot be used for any other purpose. (K.S.A. 17-1302, *et seq.* [Weeks 1969]; *Earhart v. Holbert,* 116 Kan. 487, 227 Pac. 351; *Davis v. Coventry,* 65 Kan. 557, 70 Pac. 583.) . . . ." *Topeka Cemetery Ass'n v. Schnellbacher,* 218 Kan. 39, 44, 542 P.2d 278.

Defendants argue that the dedication was for purposes of sepulture, by definition synonymous with burial, which has been defined as "the act or ceremony of burial" and, by applying these definitions, a mortuary for the conduct of funeral services is clearly within the purposes of "sepulture."

Surely no one will argue with the fact that the services of a licensed mortician in Kansas are intimately associated with the act of burial of the dead. By the same token, it is doubtful that anyone will argue with the fact that services ordinarily provided by a mortuary in Kansas are competitive commercial enterprises, with aims and goals not solely for the enjoyment and use of the public. K.S.A. 65-1713, *et seq.* Where will the line be drawn? The general rules set forth on the deeds to the cemetery lots and to the crypts give no indication to the more than 6,000 purchasers that any part of the area in which they have selected lots to bury their loved ones, or in which they themselves may eventually be buried, will be used for any commercial enterprise, whether it be the operation of a mortuary or buildings housing offices for collection departments, savings and loans, insurance, trust departments, or others. In fact, the record here is indicative of the

contrary—that purchasers of lots and crypts in the dedicated cemetery had every reason to believe that no part of the dedicated area would be used for any purpose other than for human interment, and certainly not for commercial purposes.

The statutes governing cemetery corporations are K.S.A. 17-1302, *et seq.* Essentially, cemetery corporations are empowered to convey burial lots for burial purposes only (K.S.A. 17-1309), and the corporation is required to set aside not less than fifteen percent of the purchase money for the permanent maintenance fund of the cemetery (K.S.A. 17-1311). Upon the sale of all of the burial lots in the cemetery, or upon a vote of two-thirds majority of the stockholders of the corporation, the corporation may be dissolved and thereupon the permanent maintenance fund, together with all investments and all books, records and papers of the corporation, shall be turned over to the city treasurer of the city in which, or adjacent to which, the cemetery is situated. The governing body of the city is then required to provide for the investment of the funds and to care for and maintain the cemetery (K.S.A. 17-1313).

Plaintiffs direct attention to the fact that no portion of the consideration paid by Roselawn Services, Inc., for lot seven, on which the mortuary was erected, has been paid into the maintenance fund.

Defendants counter that "burial purposes" include the operation of a mortuary; that the land conveyed for the mortuary was never platted into burial lots and, therefore, the statute requiring sale for "burial purposes" only and contribution to the maintenance fund does not apply. At this point, we make the observation from the copies of the plat and the replat provided us that, although lot seven on which the mortuary was erected does not appear to have been subdivided into burial lots, a sizable portion of the north 200 feet of the 40 acres in question was initially so divided, and the replatting of the north 200 feet of the cemetery has the effect of eliminating a sizable number of those burial lots.

Defendants also argue that the pledge of the original dedication "for its preservation and improvement" somehow justifies the construction of the mortuary for "a building is normally considered to be an improvement upon the land of its situs" and, therefore, the construction of the mortuary is an improvement and consistent with the dedication and the Kansas statutes. We do

not believe this to be the type of improvement ever intended by the dedicator.

We conclude that the construction and operation of a mortuary on the real estate here involved (which was dedicated for purposes of sepulture), or any other commercial use of any portion of that area not directed to the selling of cemetery lots with proper access thereto or for the maintenance and beautification of the area, constitutes use in a manner not contemplated by the original dedication, not fairly within the terms of that dedication, and not within the scope of the statutes of this state regulating cemetery corporations.

Judgment affirmed.